UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———

TONY DOIRELLE LEWIS,

                    Plaintiff,                    Case No. 1:17-cv-100

v.                                     Honorable Janet T. Neff

CATHLEEN STODDARD et al.,

                    Defendants.

_____/

## OPINION

        This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's claims against Defendants Stoddard, Christle, Dickinson, Mosley and Richards will be dismissed for failure to state a claim. The remainder of the action will be dismissed for improper joinder.

**Factual Allegations**

Plaintiff Tony Doitrelle Lewis presently is incarcerated at the Newberry Correctional Facility, though the actions about which he complains occurred while he was housed at the Carson City Correctional Facility (DRF). He sues the following DRF officials: Warden Cathleen Stoddard; Deputy Warden (unknown) Fenby; Resident Unit Manager (RUM) C. Miller; Assistant Resident Unit Supervisors (ARUSs) (unknown) Milks and (unknown) Mosley; Hearing Officer W. Anderson; Grievance Coordinators S. Duncan and (unknown) Kline; and Correctional Officers D. Christle, (unknown) Richards, C. Dickinson, (unknown) Hopkins, (unknown) Ward, (unknown) Koenigsknecht, G. Morris, J. Hutchinson, (unknown) Arens, and (unknown) Cook.

Plaintiff's complaint consists of a litany of alleged constitutional violations by 18 different officials over the span of three months, between January 30, 2014, and May 2, 2014. He alleges that, on the day he arrived at DRF, January 30, 2014, Defendant Christle denied him hygiene necessities, despite Plaintiff advising Christle that he had not yet received his property. Christle also made remarks about Plaintiff becoming a "fuc*in pain in the ass already," and threatened to keep Plaintiff from going home if he continued to be a problem. (Compl., ECF No. 1, PageID.5.) Shortly thereafter, Christle allegedly retaliated against Plaintiff by transferring him to the observation cube. Plaintiff requested the hygiene supplies again the following day, but Christle did not provide them. Plaintiff filed a grievance, but the grievance respondent denied it, based on Defendant Christle's statement that he could not confirm that Plaintiff had not received his property. Plaintiff filed a second grievance about the transfer to the observation cube, but Defendant Mosley denied it, despite not knowing why the move was made.

- 2 -

On January 31, 2014, Plaintiff talked to Defendant Miller about his need for hygiene necessities. She told Plaintiff that they did not have care packs for everyone. Plaintiff wrote another grievance, which Defendant Mosley denied as duplicative of his first grievance.

On February 3, Petitioner asked Defendant Mosley for toilet paper. She told him that she did not have any. On February 4, Plaintiff asked Defendant Richards for toilet paper. Richards asked Plaintiff how long he had been at the facility. After hearing Plaintiff's renewed request, Defendant Mosley told Plaintiff to use his shirt. Plaintiff submitted a grievance on February 4, which was denied by Defendant Miller, because the unit was out of paper. Miller stated in her response that it was unlikely that Plaintiff, having been given a roll on January 30 when he arrived, would need more on February 3. She also indicated that prisoners could obtain additional supplies from other prisoners.

Also on February 4, Plaintiff asked Defendant Mosley for two envelopes for his legal mail. She did not provide them and, when he persisted, she asked him if he "want[ed] her to pull envelopes out of her a**." (*Id.*) Plaintiff filed a grievance, which was denied by Defendant Miller on the allegedly false grounds that Plaintiff had available funds in his institutional account.

Plaintiff was transferred to another facility for a few weeks, so that he could meet with a legal writer. He returned to DRF on March 6, 2014, and he was placed in the same cell in the Level-I part of the facility about which he previously had grieved. On March 7, Defendants Christle and Dickinson searched the cube and confiscated a plastic store bag from inmate Chapman, a watch from inmate Rachal, and a lock from inmate Reeves. Defendant Dickinson allegedly did not file a misconduct against the inmates who possessed the contraband, but Dickinson filed a purportedly false misconduct against Plaintiff for the plastic bag, which he claimed to have found

- 3 -

in Plaintiff's locker.  Inmate Chapman told Plaintiff that Defendant Christle told Chapman that he wanted to get Plaintiff and Nolan out of the cell.  Plaintiff attempted to file a grievance, which was rejected as duplicative.  Defendant Milks found Plaintiff guilty of the misconduct.  Plaintiff sought rehearing, which was granted by the deputy warden.  However, Milks told Plaintiff that his result would be the same, regardless of rehearing, and he ordered Plaintiff out of his office.  On one of Plaintiff's grievance reponses, the responder indicated that Dickinson issued no misconduct against Plaintiff.

On March 8, 2014, Plaintiff spoke with Sergeant Chandler, asking to speak with Captain Kilcherman.  When Chandler asked why, Plaintiff explained that he was being harassed and subjected to retaliation by staff in D-Unit because of his grievances.  Shortly thereafter, Defendant Dickinson called Plaintiff to the unit office and told him to pack his things, because he was being moved to F-Unit.  Dickinson followed Plaintiff to F-Unit and spoke with the unit officers in the office.  Plaintiff suspected that Dickinson was telling the officers to retaliate against Plaintiff, so Plaintiff wrote a grievance.  In denying the grievance, the grievance respondent indicated that Defendant Dickinson had not issued any misconducts against Plaintiff and Dickinson had denied any wrongdoing.  Shortly thereafter, Plaintiff was placed on modified grievance access.[1]

In his next set of allegations, Plaintiff complains that, on March 30, 2014, Defendant Hopkins searched Plaintiff's area and left it in disarray.  Plaintiff did not grieve the matter, as he

---

[1]Under Michigan Department of Corrections policy, a prisoner is placed on modified access for filing "an excessive number of grievances which are frivolous, vague, duplicative, non-meritorious, raise non-grievable issues, or contain prohibited language. . .or [are] unfounded . . . ." MICH. DEP'T OF CORR., Policy Directive 03.02.130, ¶ HH. (eff. July 9, 2007).  The modified access period is ninety days and may be extended an additional thirty days for each time the prisoner continues to file a prohibited type of grievance.  *Id.*  While on modified access, the prisoner only can obtain grievance forms through the Step I coordinator, who determines whether the issue is grievable and otherwise meets the criteria under the grievance policy.  *Id.*, ¶ KK.

feared further retaliation.  On March 31, Defendant Hopkins moved Plaintiff from his assigned bunk to an observation cube.  When Plaintiff asked why he had been moved, Hopkins allegedly responded that it was because he wrote grievances.  Plaintiff then requested a grievance form from Defendant Kline, who provided a form.  Defendant Milks, in reviewing the grievance, falsely reported that Plaintiff had come to the office and stated, "[N]o comment," after which Milks found the grievance to be unfounded.  (*Id.*, PageID.7.)

On March 31, 2014, Plaintiff asked Defendant Ward for a roll of toilet paper.  Ward initially said that he did not have any.  When Plaintiff pointed to the toilet paper in front of Ward, Ward yelled, "You're writing all of those fuc*en grievances use them." (*Id.*)  When Plaintiff started to walk away, Ward gave him a direct order to return, at which point he handed the toilet paper to Plaintiff.  Ward again told him to write a grievance, if he wanted to.  Plaintiff requested two grievance forms, but Defendant Kline refused them, indicating that Plaintiff had received his toilet paper.

Also on March 31, Plaintiff went to the guard shack in the yard and asked the officer to allow him to speak with Sergeant Ward to complain about Defendant Ward's conduct in harassing Plaintiff.  When Plaintiff returned to the unit, he found his area in disarray and Defendant Ward reading his legal mail.  Plaintiff went to the control center, as instructed by the guard-shack officer.  Plaintiff was speaking with Officer Peterson when Sergeant Ward arrived.  Plaintiff told Peterson and Sergeant Ward that Defendant Ward was harassing him for filing grievances and that he had observed Defendant Ward reading his legal mail.  Shortly thereafter, Defendant Ward called out, "Did you tell my nephew hi[?]" (*Id.*)  Plaintiff did not respond and walked toward his cell.  Ward

called out, "Boy you better lock up, because I[']m going to keep writing you fuc*en tickets so it would look like retaliation, so you go ahead and sue me, I don[']t fuc*en care. (*Id.*)

The following day, April 1, Defendant Milks reviewed Plaintiff on an allegedly false misconduct ticket written by Defendant Ward for having books and envelopes stored in his duffel bag, in violation of rules, finding him guilty. Also on April 1, Plaintiff was reviewed on another misconduct written by Ward for insolence, alleging that Plaintiff had expressed anger about the shakedown of his cell and that Ward had been required to give a direct order for Plaintiff to leave. Defendant Miller found Plaintiff guilty, disregarding Plaintiff's version and declining to investigate further.

On April 1, 2014, Plaintiff filed a grievance against Defendants Hopkins and Milks for reclassifying Plaintiff, on the grounds that he already had been reclassified only two months earlier. During reclassification, Milks asked Plaintiff what job he wanted, and Plaintiff requested MSI worker, legal writer and recreation official. Hopkins and Milks told Plaintiff that he could not request recreation official. Milks eventually told Hopkins to put Plaintiff down as refusing to choose, having him reclassified to "double 0" sanction for 30 days.[2] Plaintiff asked for a grievance form, but Defendant Kline declined to give him one because Plaintiff had refused to participate in the reclassification process. Plaintiff wrote to the warden about his concerns, but he received no response.

---

[2]Under MDOC Policy Directive 05.01.100 ¶ X, a prisoner may be classified to unemployable status for refusing to accept or failing to fully participate in a work or school assignment or failing to participate in program classification. Being determined to be unemployable is sometimes referred to as "double 0" status. While on that status, a prisoner may not participate in more leisure time activities than those who work full time. MICH. DEP'T OF CORR., Policy Directive 05.01.100 ¶ Z.

Next Plaintiff complains that, on April 5, 2014, he returned to his cube and found Defendants Hopkins and Koenigsknecht reading his § 1983 complaint.  When Plaintiff asked why they were reading the complaint, they told Plaintiff that they could read what they wanted to.  They left Plaintiff's area in disarray.  The shakedown was Plaintiff's third in seven days, evidence, Plaintiff contends, of retaliation and discrimination.  Nevertheless, Defendant Grievance Coordinator Duncan refused Plaintiff's request for a grievance.

On April 8, Plaintiff had a scheduled call-out.  Under the policy, prisoners with call-outs are allowed to go to chow 30 minutes early, if they obtain a signed itinerary.  Defendant Hutchinson signed Plaintiff's schedule, but, when Plaintiff went to early chow, Defendant Cook told Plaintiff that he was out of place and to stop arguing with him.  Defendant Cook wrote a misconduct for being out of place.  Defendant Miller reviewed the misconduct and found that Plaintiff was out of place for approximately ten minutes, but she found Plaintiff not guilty because Hutchinson had signed his itinerary.

Plaintiff requested a grievance on April 9, in order to grieve Defendant Milks for upholding Ward's misconduct for storing items in his duffel bag.  Milks allegedly told Plaintiff that his credibility was ruined because he was on modified access and that Ward had been promoted.  He added that they intended to keep Plaintiff on sanction.

Plaintiff met with the facility psychologist on April 9, to discuss the anxiety he was suffering because of the alleged retaliation.  Because he was on loss-of-privileges status,[3] Plaintiff went back to his cell immediately.  However, Defendant Hutchinson wrote a misconduct ticket,

---

[3]Policy Directive 03.03.105 Atttach. E lists the privileges lost while on loss-of-privileges status.  They include, among other things, loss of access to the day room, TV room, kitchen, exercise facilities and law library (direct access), as well as the loss of the right to movies, telephones and visiting.

alleging that Plaintiff had stayed in the yard for 30 minutes after his appointment. Defendant Miller reviewed Plaintiff on the misconduct. She refused to examine the video recordings before finding him guilty of the misconduct, relying on the psychologist's statement that Plaintiff had left her office no later than 15:05 and had entered the unit at 15:35. Plaintiff sought a grievance form to file against Hutchinson for staff corruption, retalation and failure to follow rules. Defendant Kline refused to provide a form.

On April 11, Plaintiff asked for a grievance form to complain that Defendant Miller refused his request to be moved away from retalation staff. Defendant Kline denied the request for a grievance form. On April 14, Plaintiff asked for a grievance form to complain that Defendant Morris asked him what form he had gotten from the area where institutional forms are kept. Plaintiff indicated that he got a healthcare form. Morris stated that the form looked yellow, and that Defendant Milks had told him that Plaintiff was not to have grievance forms. When Plaintiff did not respond, Morris stated, "I got you." Plaintiff took the statement as a threat. He asked for a grievance form, which Defendant Kline denied.

That same date, April 14, 2014, Plaintiff asked for three additional grievance forms. Specifically, he asked for a grievance form to complain that Milks was creating a hostile environment, because of what he told Morris. Kline denied the form. In addition, Plaintiff requested a grievance form to complain that Defendant Milks had, on more than one occasion, denied him typing paper. Kline denied the grievance form request. Plaintiff also asked for a grievance form to complain that his area was searched while he was at dinner and that his legal mail and correspondence was thrown to the bottom of his locker. Defendant Kline again refused to provide a grievance form.

On April 14, Defendant Morris issued Plaintiff a misconduct ticket for interference with administrative rules.  Plaintiff, who was on loss-of-privileges status, walked to the unit lobby to sharpen his pencil.  While doing so, Plaintiff also spoke to other prisoners while collecting paper forms from the unit clerk.  Defendant Miller found Plaintiff guilty of the misconduct on April 15.  Plaintiff appealed, arguing that the decision was based on a fabricated rule.  Defendant Anderson held a hearing and found Plaintiff guilty of a lesser charge, but he left in place the same sanction.

On April 15, Plaintiff was paged to come back to his unit from the law library.  When he arrived, he found that Defendant Arens had dismantled Plaintiff's area of control, though no one else's area had been disturbed.  While Plaintiff was standing by the unit office, someone called Officer Kavanaugh and reported that Plaintiff was back in the unit.  Plaintiff requested a grievance form, because his area had been dismantled for the sixth time since March 30, 2014.  Defendant Kline denied the grievance form, because Officer Kavanaugh was not working F-Unit at the time in question, 19:15 hours.

The following day, April 16, Defendant Hopkins came to Plaintiff's cell, yelling that she heard Plaintiff wrote a grievance against her for telling him that he was being moved to another observation cube.  Defendant Koenigsknecht was with her, smiling.  Plaintiff requested a grievance form, which Defendant Kline denied.

On April 17, Plaintiff requested two grievance forms.  The first, a form to grieve Defendant Kline for denying him due process, was denied by Kline.  The second was a request to grieve Defendant Koenigsknecht for using the "N" word.  Kline denied the form, indicating that Koenigsknecht had issued a misconduct against Plaintiff on the same date.

Defendant Koenigsknecht issued a misconduct against Plaintiff on April 17, for interfering with the administration of the rules by standing in the kitchenette while on LOP and room restriction. Defendant Miller held a hearing on April 18, finding Plaintiff guilty of the lesser charge of being temporarily out of place. Plaintiff alleges that he was being denied the right to use the bathroom, so he had to leave the cube without approval. Miller found Plaintiff's assertion to be unsubstantiated.

On April 18, Plaintiff was also reviewed on a misconduct ticket written by Defendant Hutchinson on the grounds that Plaintiff was not in his cell during Hutchinson's rounds. Defendant Milks heard the misconduct ticket. Plaintiff contended that, because he has prostatitis and needs to use the restroom frequently, officers engaged in a practice of denying him access to the bathroom and issuing misconducts. Defendant Milks found Plaintiff guilty of violating the housing rule.

On April 19, Defendant Morris asked Plaintiff if he was enjoying his one day off sanction. Plaintiff asked for a grievance form, but it was denied by Kline. On April 22, Plaintiff was reviewed on a misconduct written by Defendant Hutchinson, which alleged that Hutchinson had overheard Plaintiff saying loudly, "I hope [I] don[']t have to talk to that retarded rum Miller." (*Id.*, PageID.13.) Hutchinson wrote that the statement was made to harass, degrade and cause alarm to Hutchinson and Miller. Officer Andersen heard the misconduct and found Plaintiff guilty.

Plaintiff requested grievance forms on April 24, 2014, seeking to complain about Inspector Christiansen (not a Defendant), Defendant Warden Stoddard and Defendant Deputy Warden Fenby, as well as the grievance coordinator, for failing to respond to his kites about other officers and failing to give him grievance forms. On April 25, Defendant Morris paged Plaintiff to the unit office. When Plaintiff arrived, Morris told him, "[S]ince your black a** want[s] to try to

- 10 -

file grievances against me, [I'll] make sure you stay on sanction you nigger." (*Id.*, PageID.14.) Plaintiff asked Defendant Hutchinson to call the shift commander to the unit, but Hutchinson told him to "fu*k off." (*Id.*)  The grievance coordinator provided Plaintiff a grievance form.  On the Step I response, Sergeant Walter stated that, after interviewing the officers, he found no wrongdoing.

On April 26, Plaintiff was reviewed on a misconduct for violation of a posted rule, which was written by Defendant Morris.  Morris alleged that Plaintiff was wearing his pajamas outside the cube between hours 23:00 and 07:00.  Plaintiff admits that the wearing of pajamas violated a rule, but he claims that inmates regularly wear their pajamas outside prescribed hours, and they are never issued a misconduct ticket.

On April 28, Defendant Morris paged Plaintiff to the office.  He repeated that he had told Plaintiff to quit filing grievances and  if Plaintiff did not stop, Morris would keep writing tickets.  Plaintiff requested a grievance form, which Defendant Kline denied because it was duplicative.  On April 29, Plaintiff went to the office to have his itinerary signed.  Defendant Morris signed it, but threw it on the floor.  Plaintiff asked for a grievance form, but Kline refused, saying the conduct did not constitute harassment or retaliation.

Plaintiff was paged to the unit office on May 1, 2014.  Defendants Miller and Fenby were present.  Plaintiff asked why his grievances and complaints were being ignored.  Instead of replying, Defendant Fenby thanked Defendant Hopkins for doing a great job.  Then Fenby and Miller reclassified Plaintiff to Level II, allegedly because of his grievances and complaints.

On May 2, Plaintiff asked for grievance forms, because he was being denied opportunities to go to the bathroom by Defendants Koenigsknecht, Hopkins, Hutchinson and Morris. Plaintiff also complained to the facility psychologist, who informed Plaintiff that she would e-mail

- 11 -

Defendant Milks.  Later, Koenigsknecht began banging on Plaintiff's metal bedframe at 7:00 every morning, asking Plaintiff if he had to go to the bathroom.  Defendant Kline denied Plaintiff's request for a grievance form, indicating that officers are required to see a living body during rounds, even if Plaintiff was awakened.  Later that day, at about 11:30 a.m., Defendant Hopkins banged on the bedframe and asked Plaintiff if he needed to use the bathroom.  Koenigsknecht was watching and began laughing.  Defendant Kline refused to give Plaintiff a grievance form.

Plaintiff spoke to Inspector Christiansen on May 1, complaining about the false misconduct reports being issued.  Christiansen did not correct the issue.  Kline refused to provide a grievance form.  On May 2, Plaintiff requested a grievance form to raise his claim of retaliatory transfer to Level II.  Kline denied the form, because Plaintiff's security classification had been increased because it was determined that he had demonstrated that he could not be managed at Level I, given that he did not want to complete his sanctions.  It also noted that Plaintiff had no right to any particular classification level.

Plaintiff contends that Defendants have retaliated against him in violation of the First Amendment, subjected him to cruel and unusual punishment in violation of the Eighth Amendment, and violated his rights to due process.

### Discussion

I.     Misjoinder

Federal Rule of Civil Procedure 20(a) limits the joinder of parties in single lawsuit, whereas Federal Rule of Civil Procedure 18(a) limits the joinder of claims.  Rule 20(a)(2) governs when multiple defendants may be joined in one action:  "[p]ersons . . . may be joined in one action as defendants if:  (A) any right to relief is asserted against them jointly, severally, or in the

alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Rule 18(a) states: "A party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party."

Courts have recognized that, where multiple parties are named, as in this case, the analysis under Rule 20 precedes that under Rule 18:

> Rule 20 deals solely with joinder of parties and becomes relevant only when there is more than one party on one or both sides of the action. It is not concerned with joinder of claims, which is governed by Rule 18. Therefore, in actions involving multiple defendants Rule 20 operates independently of Rule 18. . . .

> Despite the broad language of Rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all.

7 CHARLES ALLEN WRIGHT, ARTHUR R. MILLER, MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE CIVIL § 1655 (3d ed. 2001), *quoted in Proctor v. Applegate*, 661 F. Supp. 2d 743, 778 (E.D. Mich. 2009), and *Garcia v. Munoz*, No. 08-1648, 2007 WL 2064476, at *3 (D.N.J. May 14, 2008); *see also Neitzke v. Williams*, 490 U.S. 319, 328 (1989) (joinder of defendants is not permitted by Rule 20 unless both commonality and same transaction requirements are satisfied).

Therefore, "a civil plaintiff may not name more than one defendant in his original or amended complaint unless one claim against each additional defendant is transactionally related to the claim against the first defendant and involves a common question of law or fact." *Proctor*, 661 F. Supp. 2d at 778. When determining if civil rights claims arise from the same transaction or occurrence, a court may consider a variety of factors, including, "the time period during which the alleged acts occurred; whether the acts . . . are related; whether more than one act . . . is alleged;

- 13 -

whether the same supervisors were involved, and whether the defendants were at different geographical locations." *Id.* (quoting *Nali v. Michigan Dep't of Corrections*, 2007 WL 4465247, *3 (E.D. Mich. December 18, 2007)).

Permitting the improper joinder in a prisoner civil rights action also undermines the purpose of the PLRA, which was to reduce the large number of frivolous prisoner lawsuits that were being filed in the federal courts. *See Riley v. Kurtz*, 361 F.3d 906, 917 (6th Cir. 2004). Under the PLRA, a prisoner may not commence an action without prepayment of the filing fee in some form. *See* 28 U.S.C. § 1915(b)(1). These "new fee provisions of the PLRA were designed to deter frivolous prisoner litigation by making all prisoner litigants feel the deterrent effect created by liability for filing fees." *Williams v. Roberts*, 116 F.3d 1126, 1127-28 (5th Cir. 1997). The PLRA also contains a "three-strikes" provision requiring the collection of the entire filing fee after the dismissal for frivolousness, etc., of three actions or appeals brought by a prisoner proceeding in forma pauperis, unless the statutory exception is satisfied. 28 U.S.C. § 1915(g). The "three strikes" provision was also an attempt by Congress to curb frivolous prisoner litigation. *See Wilson v. Yaklich*, 148 F.3d 596, 603 (6th Cir. 1998).

The Seventh Circuit has explained that a prisoner like plaintiff may not join in one complaint all of the defendants against whom he may have a claim, unless the prisoner satisfies the dual requirements of Rule 20(a)(2):

> Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that [a multi]-claim, [multi]-defendant suit produced but also to ensure that prisoners pay the required filing fees-for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g) . . . .

- 14 -

> A buckshot complaint that would be rejected if filed by a free person -- say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions -- should be rejected if filed by a prisoner.

*George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *see also Brown v. Blaine*, 185 F. App'x 166, 168-69 (3rd Cir. 2006) (allowing an inmate to assert unrelated claims against new defendants based on actions taken after the filing of his original complaint would have defeated the purpose of the three strikes provision of PLRA); *Patton v. Jefferson Correctional Center*, 136 F.3d 458, 464 (5th Cir. 1998); *Shephard v. Edwards*, 2001 WL 1681145, * 1 (S.D. Ohio Aug[.] 30, 2001) (declining to consolidate prisoner's unrelated various actions so as to allow him to pay one filing fee, because it "would improperly circumvent the express language and clear intent of the 'three strikes' provision"); *Scott v. Kelly*, 107 F. Supp. 2d 706, 711 (E.D. Va. 2000) (denying prisoner's request to add new, unrelated claims to an ongoing civil rights action as an improper attempt to circumvent the PLRA's filing fee requirements and an attempt to escape the possibility of obtaining a "strike" under the "three strikes" rule). To allow Plaintiff to proceed with these improperly joined claims and defendants in a single action would permit him to circumvent the PLRA's filing fee provisions and allow him to avoid having to incur a "strike" for purposes of § 1915(g), should any of his claims turn out to be frivolous.

Arguably, the Court must look to the allegations against Defendant Stoddard, who is the first Defendant named in the action, to determine whether other Defendants are properly named. *See Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997) ("In such a case, the court can generally dismiss all but the first named plaintiff without prejudice to the institution of new, separate lawsuits by the dropped plaintiffs"); *Carney v. Treudeau*, No. 2:07-cv-83, 2008 WL 485204, at *3 (W.D. Mich. Feb. 19, 2008) (same). Plaintiff makes no factual allegations against Defendant

Stoddard, except that she failed to act to prevent the other Defendants' actions and authorized his transfer to Level II.

Having said that, the Court may alternately consider the first Defendant against whom Plaintiff makes factual allegations, Defendant Christle. Christle accused Plaintiff of making trouble on his first day and failed to give Plaintiff hygiene products that day. Christle also moved Plaintiff to an observation cube the day after he arrived. In addition, Defendant Christle, with Defendant Dickinson, conducted a search of the cube in which Plaintiff was housed on March 7, 2015, just after Plaintiff was returned to DRF. Because Defendant Christle took one action with Defendant Dickinson, Defendant Dickinson is not misjoined in the action. Defendant Dickinson also escorted Plaintiff to his new unit the following day. The Court will consider the merit of these properly joined allegations in the next section of this opinion. Despite the fact that Plaintiff routinely alleges retaliation against all Defendants, none of Plaintiff's claims against the other Defendants arose out of the same facts.

Under Rule 21 of the Federal Rules of Civil Procedure, "[m]isjoinder of parties is not a ground for dismissing an action." Instead, Rule 21 provides two remedial options: (1) misjoined parties may be dropped on such terms as are just; or (2) any claims against misjoined parties may be severed and proceeded with separately. *See DirecTV, Inc. v. Leto*, 467 F.3d 842, 845 (3d Cir. 2006); *Carney*, 2008 WL 485204, at *2; *Coal. to Defend Affirmative Action v. Regents of Univ. of Mich.*, 539 F. Supp. 2d 924, 940 (E.D. Mich. 2008); *see also Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 682 (6th Cir. 1988) ("Parties may be dropped . . . by order of the court . . . of its own initiative at any stage of the action and on such terms as are just."). "Because a district court's decision to remedy misjoinder by dropping and dismissing a party, rather than severing the

- 16 -

relevant claim, may have important and potentially adverse statute-of-limitations consequences, the discretion delegated to the trial judge to dismiss under Rule 21 is restricted to what is 'just.'" *DirecTV*, 467 F.3d at 845.

At least three judicial circuits have interpreted "on such terms as are just" to mean without "gratuitous harm to the parties." *Strandlund v. Hawley*, 532 F.3d 741, 745 (8th Cir. 2008) (quoting *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000)); *see also DirecTV, Inc.*, 467 F.3d at 845. Such gratuitous harm exists if the dismissed parties lose the ability to prosecute an otherwise timely claim, such as where the applicable statute of limitations has lapsed, or the dismissal is with prejudice. *Strandlund*, 532 F.3d at 746; *DirecTV*, 467 F.3d at 846-47; *Michaels Building Co.*, 848 F.2d at 682.

Plaintiff brings causes of action under 42 U.S.C. § 1983. For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. *See* Mich. Comp. Laws § 600.5805(10); *Carroll v. Wilkerson*, 782 F.2d 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999). Furthermore, "Michigan law provides for tolling of the limitations period while an earlier action was pending which was later dismissed without prejudice." *Kalasho v. City of Eastpointe*, 66 F. App'x 610, 611 (6th Cir. 2003).

All of the actions about which Plaintiff complains occurred between January 30 and May 15, 2014. Because Plaintiff was on modified access during much of the period, the claims arising prior to March 30, 2014, are at risk of being time-barred if dismissed. The Court therefore

will consider all of Plaintiff's claims, even if misjoined, that occurred before March 30, 2014. Plaintiff's remaining claims are not at risk of being time-barred, if Plaintiff promptly refiles.[4]

As a consequence, with respect to all claims that occurred on or after March 30, 2014, Plaintiff will not suffer gratuitous harm if the improperly joined Defendants are dismissed. Accordingly, the Court will exercise its discretion under Rule 21 and dismiss all Defendants other than Defendants Stoddard, Christle, Dickinson, Mosley, and Richards from the action, without prejudice to the institution of new, separate lawsuits by Plaintiff against those Defendants. The Court will consider the claims against Defendants Stoddard, Christle, Dickinson, Mosley and Richards under the PRLA's dismissal standard.

I.    Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although

_____

[4]As fully discussed in this opinion, Plaintiff is cautioned that he must limit all future actions to Defendants who are transactionally related to one another. Not all of the dismissed claims and Defendants would be properly brought in a single new action.

the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than

a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*,

550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the

mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the

pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill*

*v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility

standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1)

and 1915(e)(2)(B)(i)).

    To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a

right secured by the federal Constitution or laws and must show that the deprivation was committed

by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v.*

*Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating

federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to

identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271

(1994).

### A.  Supervisory Liability

    Plaintiff alleges that Defendant Stoddard failed to supervise her subordinates and

failed to respond to Plaintiff's complaints and grievances. Plaintiff also alleges that Defendant

Mosley improperly denied his grievance against Defendant Christle.

    Government officials may not be held liable for the unconstitutional conduct of their

subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676;

*Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d

- 19 -

484, 495 (6th Cir. 2009).   A claimed constitutional violation must be based upon active unconstitutional behavior.  *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002).  The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act.  *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004).  Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance.  *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).  "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Iqbal*, 556 U.S. at 676.  Plaintiff therefore fails to state a claim against Defendants Stoddard and Mosley for failing to supervise employees, denying grievances and failing to respond to kites.

### B.    Eighth Amendment

Plaintiff alleges that Christle deprived him of his requested hygiene necessities on one occasion, January 30, 2014, the date Plaintiff arrived at the DRF.  Plaintiff alleges that, in denying him those hygiene items, Christle also called him a fuc*in pain in the a** and threatened to keep him from going home if he continued to be a problem prisoner.  Plaintiff contends that Christle's denial of hygiene necessities constituted a violation of the Eighth Amendment. In addition, Plaintiff alleges that, when he asked for toilet paper on February 3, she told him that she did not have any.  After he asked Defendant Richards for toilet paper and received the same answer, Defendant Mosley allegedly told Plaintiff to use his shirt.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes.  Punishment may not be "barbarous" nor may it contravene

society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

Allegations about temporary inconveniences, e.g., being deprived of a lower bunk, subjected to a flooded cell, or deprived of a working toilet, do not demonstrate that the conditions fell beneath the minimal civilized measure of life's necessities as measured by a contemporary standard of decency. *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *see also J.P. v. Taft*, 439 F. Supp. 2d 793, 811 (S.D. Ohio 2006) ("[M]inor inconveniences resulting from the difficulties in administering a large detention facility do not give rise to a constitutional claim." (internal citation omitted)). *But see Flanory v. Bonn*, 604 F.3d 249, 255-56 (6th Cir. 2010) (holding that allegations that an inmate was deprived of toothpaste for 337 days and experienced dental health problems did not constitute a temporary inconvenience and were sufficient to state an Eighth Amendment claim).

The one-time denial of Plaintiff's request for hygiene items and the short-term denial of toilet paper are insufficient, by themselves, to state a claim under the Eighth Amendment.

- 21 -

Plaintiff makes no allegation that he lacked hygiene items for more than a day or two, and he expressly alleges that he lacked toilet paper for only two days.  Such deprivations are merely temporary inconveniences that do not rise to the level of Eighth Amendment violations.

Further, the mere fact that Defendant Christle and Defendant Mosley allegedly used unprofessional or degrading language fails to state a claim for relief.  The use of harassing or degrading language by a prison official, although unprofessional and deplorable, does not rise to constitutional dimensions.   *See Ivey v. Wilson*, 832 F.2d 950, 954-55 (6th Cir. 1987); *see also Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits); *Violett v. Reynolds,* No. 02-6366, 2003 WL 22097827, at *3 (6th Cir.  Sept. 5, 2003) (verbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim); *Thaddeus-X v. Langley*, No. 96-1282, 1997 WL 205604, at *1 (6th Cir. Apr. 24, 1997) (verbal harassment is insufficient to state a claim); *Murray v. U.S. Bureau of Prisons*, No. 95-5204, 1997 WL 34677, at *3 (6th Cir. Jan. 28, 1997) ("Although we do not condone the alleged statements, the Eighth Amendment does not afford us the power to correct every action, statement or attitude of a prison official with which we might disagree."); *Clark v. Turner*, No. 96-3265, 1996 WL 721798, at *2 (6th Cir. Dec. 13, 1996) ("Verbal harassment and idle threats are generally not sufficient to constitute an invasion of an inmate's constitutional rights."); *Brown v. Toombs*, No. 92-1756, 1993 WL 11882 (6th Cir. Jan. 21, 1993) ("Brown's allegation that a corrections officer used derogatory language and insulting racial epithets is insufficient to support his claim under the Eighth Amendment.").  Accordingly, Plaintiff fails to state an Eighth Amendment claim against Defendants Christle and Mosley arising from their alleged verbal abuse.

C.      Retaliation

Plaintiff raises a variety of retaliation claims against Defendants Stoddard, Christle, Mosley and Dickinson.  First, he claims that Defendant Stoddard authorized his transfer from Level I to Level II, in retaliation for his filing of grievances.  He also claims that Defendant Christle denied him hygiene items in retaliation for his filing of grievances and that Defendant Christle acted in conjunction with Defendant Dickinson to issue Plaintiff a minor misconduct ticket for possession of a plastic bag.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution.  *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).  In order to set forth a First Amendment retaliation claim, a plaintiff must establish that:  (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct.  *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct.  *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

To the extent that Plaintiff claims that Defendant Christle's alleged denial of hygiene necessities was retaliatory, his claim fails at the first step.  Christle denied Plaintiff his hygiene necessities on the day that Plaintiff arrived at the prison, before he had filed any grievances. Plaintiff therefore fails to state a retaliation claim against Christle for that action.

Plaintiff's remaining retaliation claims against Defendants Christle and Dickinson fail at the second step.  The adverseness inquiry is an objective one, and does not depend on how

- 23 -

a particular plaintiff reacted. The relevant question is whether the defendants' conduct is "*capable* of deterring a person of ordinary firmness*"; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (emphasis in original).

Being moved to a different cell does not rise to the level of adverse action. Even most transfers to a different prison do not constitute adverse action. "Since prisoners are expected to endure more than the average citizen, and since transfers are common among prisons, ordinarily a transfer would not deter a prisoner of ordinary firmness from continuing to engage in protected conduct." *Siggers-El v. Barlow*, 412 F.3d 693, 701 (6th Cir. 2005). *See, e.g., Smith v. Yarrow*, 78 F. App'x. 529, 543 (6th Cir. 2003) ("transfer from one prison to another prison cannot rise to the level of an adverse action because it would not deter a person of ordinary firmness from the exercise of his First Amendment rights"). Only when the transfer results in placement in a lock-down unit or imposition on other rights will transfer be deemed adverse. *See, e.g., Hill v. Lappin*, 630 F.3d 468, 474 (6th Cir. 2010) (holding that transfer to administrative segregation or another prison's lock-down unit can be sufficient to constitute adverse action); *Siggers-El*, 412 F.3d at 702 (holding that a transfer was an "adverse action," where the transfer resulted in plaintiff losing a high paying job that paid for his lawyer fees and moved him further from the attorney). Here, Plaintiff fails to allege that he experienced any significant changes in conditions from one cell to the next. He therefore fails to demonstrate that Christle's action to move Plaintiff to a different cell amounted to adverse action.

Similarly, Plaintiff's claim that Defendant Dickinson escorted him to a different unit falls far short of demonstrating adverse action. Plaintiff does not even allege that Dickinson initiated the move. In fact, Plaintiff suggests that the move to F-Unit was initiated by Sergeant Chandler, in

- 24 -

response to Plaintiff's complaint that staff in D-Unit was harassing him. Defendant Dickinson merely told Plaintiff that he was being moved and escorted Plaintiff to F-Unit. Further, Plaintiff's suggestion that, because Dickinson spoke with unknown officers after bringing Plaintiff to the unit, he was telling those officers to retaliate against Plaintiff is utterly speculative. Such speculation falls far short of demonstrating a plausible claim of retaliation. *See Iqbal*, 556 U.S. at 679.

Further, Plaintiff claims that Defendant Dickinson, with Defendant Christle's assistance, wrote Plaintiff a "false" misconduct ticket on March 8, 2014, for possessing contraband in the form of a plastic bag.[5] (*See* Ex. B to Compl., ECF No. 1-1, PageID.23.) A misconduct charge for "Contraband" is a Class-III misconduct. A Class-III misconduct is the most minor misconduct issued by the prison, punishable by not more than five days' toplock (confinement to quarters), 15 days' loss of privileges, and assignment of not more than 20 hours of extra duty. *See* MICH. DEP'T OF CORR., Policy Directive 03.03.105 Attach. C. "[S]ome adverse actions are so de minimis that they do not give rise to constitutionally cognizable injuries." *Bell v. Johnson*, 308 F.3d 594, 603 (6th Cir. 2002). "[W]hen the alleged adverse action is 'inconsequential' resulting in nothing more than a 'de minimis injury,' the claim is properly dismissed as a matter of law." *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583, 84 (6th Cir. 2012) (citing *Bell*). The Sixth Circuit has held that 14 days' loss of privileges, a short period in toplock, and extra duty are *de minimis* sanctions that would not deter a person of ordinary firmness from pursuing a grievance or other First Amendment protected activity. *See Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004) (citing *Thaddeus–X*, 175 F.3d at 396–97); *see also Gordon v. Benson*, No. 1:12-CV-295, 2012 WL 2522290, at *13

---

[5]Plaintiff does not even allege that the March 8, 2014, cell search conducted by Defendants Christle and Dickinson was taken in retaliation for Plaintiff's filing of grievances. Nor could he. The cell search involved searching the property of all four prisoners in the cell.

(W.D. Mich. June 28, 2012) (Plaintiff's seven-day loss of privileges is not sufficiently adverse to state a retaliation claim); *Patterson v. Godward*, No. 2:08-cv-78, 2012 WL 652470, at *4 (W.D. Mich. Feb. 28, 2012), *aff'd*, 505 F. App'x 424 (6th Cir. 2012) (minor misconduct conviction was not adverse action when the most severe sanction that the plaintiff could have received for a minor misconduct conviction was 15 days loss of privileges); *Catanzaro v. Carr*, No. 10-CV-14554, 2011 WL 5008380, at *4 (E.D. Mich. Sept. 22, 2011), *report and recommendation adopted*, No. 10-14554, 2011 WL 5008357 (E.D. Mich. Oct. 20, 2011) (a total of 17 days loss of privileges for 2 minor misconduct convictions did not constitute adverse action).  Under this authority, the Class III misconduct charge issued by Dickinson is insufficiently adverse to support a retaliation claim.

Plaintiff also fails to allege a retaliation claim against Defendant Stoddard for approving his reclassification to security Level II.  In an ordinary case, changes to security classifications are routine and permissible.  The Supreme Court has held that a prisoner does not have a protected liberty interest in the procedures affecting his classification and security because the resulting restraint does not impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995).  Moreover, the Supreme Court repeatedly has held that a prisoner has no constitutional right to be incarcerated in a particular facility or to be held in a specific security classification. *See Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); *Meachum v. Fano*, 427 U.S. 215, 228-29 (1976).

Nevertheless, a reclassification to a higher level security confinement may, in some circumstances be sufficiently adverse to support a retaliation claim.  However, even assuming that transfer from a Level-I unit to a Level-II unit at the same facility amounts to adverse action, Plaintiff

- 26 -

fails to state a retaliation claim against Defendant Stoddard.  It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence.  *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987); *Vega v. DeRobertis*, 598 F. Supp. 501, 506 (C.D. Ill. 1984), *aff'd*, 774 F.2d 1167 (7th Cir. 1985). "[A]lleging merely the ultimate fact of retaliation is insufficient."  *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'"  *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *Skinner v. Bolden*, 89 F. App'x 579, 579-80 (6th Cir. 2004) (without more, conclusory allegations of temporal proximity are not sufficient to show a retaliatory motive).  Plaintiff merely alleges the ultimate fact of retaliation in this action.  Plaintiff does not allege that Defendant Stoddard was the subject of a grievance.  He also fails to allege facts that would support a conclusion that Stoddard retaliated against him because he filed a grievance against some other officer or officers.  Accordingly, his speculative allegation fails to state a claim.  *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

> D.      Access to the Courts

Plaintiff alleges that, on February 4, 2014, Defendant Mosley denied his request for two envelopes for his legal mail.  He suggests that her denial interfered with his right to access the courts.

It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal

information for prisoners.  *Id.* at 817.  The Court further noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them."  *Id.* at 824-25.  The right of access to the courts also prohibits prison officials from erecting barriers that may impede the inmate's access to the courts.  *See Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992).

An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit.  In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury."  *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000.  In other words, a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim.  *Lewis*, 518 U.S. at 351-53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims.  The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement.  Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355.  "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only."  *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc).  Moreover, the underlying action must have asserted a non-frivolous

claim.  *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed actual injury to include requirement that action be non-frivolous).

In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation."  *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant."  *Id.* at 416.

Plaintiff utterly fails to allege that he suffered actual injury.  He fails to describe the underlying litigation as required by *Christopher*, 536 U.S. at 415, and he does not suggest that his delay in receiving envelopes interfered with his efforts to pursue that litigation.  He therefore fails to state an access-to-the-courts claim.

<u>**Conclusion**</u>

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's claims against Defendants Stoddard, Christle, Dickinson, Mosley and Richards will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  Plaintiff's remaining claims will be dismissed without prejudice because they are misjoined.

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3).  *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997).  For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal.  Should Plaintiff appeal this decision, the Court will assess the

$505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

   This is a dismissal as described by 28 U.S.C. § 1915(g).

   A Judgment consistent with this Opinion will be entered.


Dated: <u>March 10, 2017</u>   <u>/s/ Janet T. Neff</u>
           Janet T. Neff
           United States District Judge